**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tonja Mize,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-21-00330-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is a Report and Recommendation (R&R) issued by United States Magistrate Judge D. Thomas Ferraro. (Doc. 25.) Judge Ferraro recommends vacating the Social Security Commissioner's final decision denying Mize benefits and remanding for further proceedings. The Commissioner filed an Objection, and Mize responded. (Docs. 26, 27.)

After an independent review of parties' briefing and the administrative record, the Court will overrule the Commissioner's Objection and adopt Judge Ferraro's Recommendation.

**STANDARD OF REVIEW**

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). District courts are

not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Further, a party is not entitled as of right to *de novo* review of evidence or arguments which are raised for the first time in an objection to the R&R, and the Court's decision to consider newly raised arguments is discretionary. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).

**BACKGROUND**

The parties do not object to the Magistrate Judge's summary of the factual and procedural background. (Doc. 25 at 1–4.) Therefore, the Court does not restate the facts here and instead includes the relevant facts in its discussion of the issues presented.

**DISCUSSION**

Defendant objects to the Magistrate Judge's conclusions that the Administrative Law Judge (ALJ) erred in evaluating Mize's testimony regarding her impairments or migraines and anxiety and depression and in concluding that the ALJ erred in not articulating analysis regarding lay witness statements. (Doc. 26 at 4.)

A court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). The reviewing court may only consider the ALJ's stated reasoning and "may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

When a claimant presents objective medical evidence establishing an impairment "that could reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing evidence." *Smartt*, 53 F.4th at 497 (quoting *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008)). The ALJ must specify which testimony he finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that determination.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). A claimant is not required to corroborate the severity of alleged symptoms, but "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498. Similarly, a "germane explanation is required to reject lay witness testimony." *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017).

At step two, the ALJ found that Mize's degenerative disc disease, migraines, anxiety disorder, and depressive disorder were severe impairments. (AR 16.) When determining her RFC, the ALJ found that Mize's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 19.) There is no evidence of malingering in the record. Thus, in order to discount Mize's statements about the extent to which her impairments would cause her to miss work or be unable to work with others, the ALJ was required to provide specific, clear, and convincing reasons.[1] To reject lay witness testimony, the ALJ was required to provide a germane explanation.

**I.     The ALJ's Rejection of Migraine Symptom Testimony**

At the October 2020 hearing, Mize testified that she experiences a migraine three to four times a week, each lasting between three hours and three days. (AR 41.) She explained that the migraines cause light sensitivity and require her to be in a dark, quiet area. (*Id.*) When asked if her migraine symptoms alone would cause her to miss two or more days of work per month, Mize responded, "Yes, definitely." (AR 42.) The VE testified that missing work twice per month occasionally, or once per month consistently, would eliminate any positions in significant numbers. (AR 47–48.)

Although the ALJ did not specifically state that Mize's statements concerning the intensity, persistence and limiting effects of the migraine symptoms were not credible, the

---

[1] The Commissioner also argues that the Magistrate Judge applied an incorrect standard in evaluating the ALJ's findings. The Commissioner asserts that the Ninth Circuit requirement of "clear and convincing" requires more than the deferential "substantial evidence" standard set forth in 42 U.S.C. 405(g). (Doc. 26 at 5 n.2.) The Court does not address this argument as (1) it is bound by Ninth Circuit precedent, and (2) under either standard, the Commissioner's arguments fail.

ALJ did state that Mize's statements were not entirely consistent with the medical evidence and other evidence in the record, and that the statements were not fully supported by the medical evidence. (AR 19.) In determining Mize had the RFC to perform light work, except for contact with the public, the ALJ wrote:

> It is unclear as to whether the severity of the claimant's 12–16 headaches would require her to miss work. She stated that they last between three hours and three days. (Hearing testimony.) There is no further mention of frequency or duration for migraines after she was prescribed Emgality. Thus, the undersigned finds sufficient evidence that the claimant should avoid exposure to work hazards to avoid exacerbation.

(AR 21.)

The Magistrate Judge found that the ALJ erred in discounting Mize's testimony about how often her migraines would cause her to miss work because the ALJ did not provide clear and convincing reasons supported by substantial evidence for discounting the testimony. (Doc. 25 at 7.) The Commissioner argues that the Magistrate Judge erred because the ALJ identified specific, clear and convincing reasons including contradictory medical records, Mize's refusal to take Botox injection treatments; and evidence that treatment did result in improvement in Mize's condition.  (Doc. 26 at 6–7.) The Court disagrees.

The objective medical evidence considered by the ALJ is not inconsistent with Mize's reports of the frequency and severity of her migraines. As the Magistrate Judge observed, clinical documentation of normal cranial nerves and painless range of motion is not inconsistent with reported migraines because the "cause of migraines is generally unknown." *Cindy H. v. Comm'r of Soc. Sec.*, 574 F. Supp. 3d 923, 928–29 (W.D. Wash 2021). Additionally, a single appointment without acute migraine distress does not contradict Mize's testimony because migraines are an episodic condition. *Id.* at 930. The Commissioner asserts that the ALJ's finding is supported by a physical exam in October 2019 when "Plaintiff appeared healthy and in no acute distress *while reporting daily headaches*." (Doc. 26 at 7 (citing AR 611).) The Court finds this argument unpersuasive because it is unsupported by the record. The Commissioner cites to an August 2019

encounter with Mize's primary care provider that noted migraines as her chief complaint, documented that they were not controlled with the current medications, and referred Mize to a neurologist. (AR 609–12.) The ALJ and Magistrate Judge did both discuss an October 2019 exam, noting documentation of normal cranial nerves. (AR 20 (citing AR 693).) This was Mize's new patient appointment with her neurology nurse practitioner; she presented specifically for migraines, explained that her current medications were not working, and was prescribed Emgality for the first time. Nothing in the record shows that Mize had a clinical encounter, either in August or October 2019, in which she "appeared healthy and in no acute distress," while reporting chronic migraines. In addition, the ALJ's statement that the January 2020 primary care encounter "made no mention of migraines" is incorrect, because the treating notes state that "Estradiol is conflicted with her [history of] migraines. Advise to stop and start SSIs." (AR 826–27.) These records demonstrate that Mize's migraines were an ongoing problem discussed with her providers and do not contradict her subjective reports.

      The ALJ also seems to have inferred that Mize's migraines would not cause her to miss work at all because there was no frequency documentation after Emgality was prescribed. Yet the record does include evidence of migraine frequency after June 5, 2020, the date when Mize was eventually able to fill the prescription. Mize's September 2020 treatment report states the medication had reduced her migraines to two to four times a week. Mize testified in the October 2020 hearing that the injectable "took my migraines from every day of my life down to three to four days a week, which to a person that gets them every day to three to four times a week is amazing." (AR 294, 41.) By discounting these subjective reports, it appears that the ALJ interpreted the lack of objective medical evidence of recent frequency as a reason to disbelieve Mize's statement that migraines would cause work absences. This was an error, because an ALJ cannot conclude that a claimant is not credible or their symptoms are less severe because objective evidence of severity is lacking. The Commissioner is correct that an ALJ may make an adverse credibility finding when the record directly contradicts the testimony or the ALJ can point

to specific discrepancies. *See Smartt*, 53 F.4th at 497–98. However, in the absence of inconsistencies, an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony because that would "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Id.* (quoting *Burch v. Banhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Finally, the Commissioner argues that the Magistrate Judge erred in concluding the ALJ relied on Mize's refusal to take Botox injection treatment for her migraines, although the argument is internally inconsistent. The Commissioner first argues that the ALJ did not say he was relying on Plaintiff's refusal to take Botox. The Commissioner then argues that Mize's refusal "was a valid consideration in the ALJ's analysis that undermined Plaintiff's claims that her migraines precluded work." (Doc. 26 at 6.) The Commissioner asserts that it is notable that Mize continued to try medications that did not work over a different type of treatment that might have provided relief. But this argument is undermined by the Commissioner's argument that the medications Mize took were eventually effective in treating her migraines. (*Id.* at 6.) None of these arguments are persuasive. The neurology nurse practitioner suggested Botox at Mize's new patient appointment in October 2019, the same appointment when she elected to try Emgality. (AR 693.) As the Magistrate Judge concluded, this "does not provide [a] clear and convincing reason because Mize was still attempting new medication and treatments." (Doc. 25 at 7.)

In sum, the Court agrees with the Magistrate Judge that the ALJ erred by finding that it was "unclear" if Mize's migraines would result in missed work when she had testified that they would. The ALJ did not offer clear and convincing reasons to support an adverse credibility determination or identify specific testimony that he found lacking credibility. Although the ALJ stated that Mize's testimony was "inconsistent," the record does not support a lack of consistency. Further, the ALJ penalized Mize for a lack of recent objective evidence of frequency, effectively requiring her to fully corroborate her subjective statements and rendering her testimony superfluous. This error was harmful

because the ALJ did not incorporate Mize's testimony that her migraines would cause her to miss two or more days of work into the disability determination. If he had done so, it would have eliminated any appropriate positions that exist in significant numbers.

## II. The ALJ's Rejection of Anxiety Symptom Testimony

The ALJ found that Mize's testimony about the severity of her anxiety and depression "inconsistent because they are not fully supported by the medical evidence." (AR 19.) The Magistrate Judge found that the ALJ's reasons for discounting Mize's testimony were not clear and convincing or supported by substantial evidence. (Doc. 25 at 7, 11, 12.) The Commissioner objects to the Magistrate Judge's conclusion and argues that "several inconsistencies" between Mize's testimony and evidence in the record undermine her statements about the severity of her symptoms. (Doc. 26 at 5.) The Commissioner asserts that the ALJ appropriately considered Mize's daily activities and her choice to decline psychiatric medication as sufficient reasons to conclude that her symptoms were "not as limiting as she alleged." (Doc. 26 at 8.) The Court is not persuaded by the Commissioner's objections.

In evaluating Mize's evidence of anxiety and depression, the ALJ found that the longitudinal evidence showed "agoraphobia, anxious mood, and fear of people in general," supporting "a limitation precluding contact with the public as part of work duties." (AR 20.) At the administrative hearing, Mize reported that her anxiety prevents her from working because she has "a problem going out in public. I'll get panic attacks really bad that are increasingly getting worse," over the prior year. (AR 37–38.) Mize explained that she experienced sexual harassment as well as panic attacks at her past jobs and "needed somebody on the other side of the phone to reassure" her. (AR 38.) Mize's primary care provider began offering only telephonic visits after she had a severe panic attack during an in-person appointment. (AR 40.) On the rare occasions when she drives or shops alone, she must talk to another trusted person on the phone, and one therapy appointment ended because she was running errands during the session. (AR 43, 249, 733.) The VE noted that if Mize cannot work on her own and cannot work near or around coworkers, that would

eliminate any possible positions. (AR 50.) The Magistrate Judge found that if the ALJ had credited Mize's limitations from her anxiety, there would have been no available positions at step five. (Doc. 25 at 11–12.) Because the ALJ did not provide clear and convincing reasons to doubt the severity of Mize's panic attacks and other symptoms, the Magistrate Judge concluded that the ALJ erred. (*Id.*)

The Commissioner argues that the ALJ appropriately considered Mize's daily activities and her choice to decline psychiatric medication as sufficient reasons to conclude that her symptoms were "not as limiting as she alleged." (Doc. 26 at 8.) However, just as with the migraine evidence, the ALJ did not make an explicit credibility finding as to Mize's testimony about her panic attacks. In fact, the ALJ did not conclude that Mize's daily activities were inconsistent with her testimony. The ALJ observed that Mize does not need reminders to dress, bathe, or take medication, and can prepare her own meals, perform light housework in short spurts, and drive and ride in a car. (AR 18.) These observations do not contradict Mize's testimony that her frequent, severe panic attacks prevent her from going out in public without a trusted person, and the observations are not reasons to discredit Mize's testimony about the severity of her symptoms.

The ALJ noted that Mize "continued to refuse psychiatric medication against the doctor's recommendation." (AR 20.) An ALJ may consider a claimant's reasons for resisting treatment and find that the refusal weighs against credibility if that decision is unexplained or inadequately explained. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ did not do so here. Mize explained that she was "afraid of new medications" because of past side effects and concerned about interactions with the migraine medication. (AR 253, 294, 814.) Mize's fiancé reported that a past attempt with anxiety medication only "made things 10 times worse!" (AR 300.) The ALJ did not consider Mize's reasoning or evaluate whether her explanation was inadequate. Therefore, it cannot be said that the ALJ relied on Mize's refusal to try certain psychiatric medications as a clear or convincing reason to discount Mize's testimony about the severity of her anxiety.

The Commissioner argues that Mize's choice not to try further psychiatric medication is "undermined" because "Plaintiff's therapist encouraged Plaintiff to follow up on her concerns about drug interactions with her doctor, but Plaintiff said she had not followed up because she was overwhelmed." (Doc. 26 at 8–9 (citing AR 733).) The Commissioner further dismisses Mize's fears because one doctor "advised her to stagger the medications," so "those concerns were addressed by doctors." (Doc. 26 at 9 (citing AR 814).) The ALJ did not include this reasoning in his decision, and the Court may not affirm on a ground not invoked by the ALJ. *Garrison*, 759 F.3d at 1010. Regardless, the Commissioner's argument does not contradict Mize's testimony about her anxiety and panic attacks, because—unlike the claimant in *Molina* whose refusal of treatment was attributable to "personal preference,"—Mize's choice is adequately explained and stemmed from being afraid and overwhelmed. *See Molina*, 674 F.3d at 1114. Mize's struggle to follow up with her doctor does not contradict her testimony; it does undermine the ALJ's finding that Mize can easily manage her own treatment and medications.

The Commissioner is correct that the ALJ accounted for Mize's anxiety by limiting her to no contact with the public as part of her work duties, but the ALJ did not acknowledge that the same limitation would likely apply to coworkers. Nor did the ALJ provide clear and convincing reasons to doubt her subjective testimony. The Court therefore affirms the Magistrate Judge's conclusions as to this testimony.

### III. Lay Witness Testimony

Mize's testimony about her symptoms was corroborated by three lay witnesses who provided statements and evidence. (AR 298–303.) The ALJ found these statements "generally supportive of and consistent with the claimant's allegations that she suffers from agoraphobia due to anxiety, stays in bed due to migraines, and must be accompanied when in public," but discounted these same symptoms in determining Mize's RFC, without a clear and convincing reason. The Magistrate Judge concluded this was in error, and the Court agrees. An ALJ must provide a germane explanation to reject lay witness testimony. The ALJ did not do so here. *See Leon*, 880 F.3d at 1046.

In the Objection, the Commissioner argues that because the ALJ provided "sufficient reasons to discount the testimony of one witness—here, the Plaintiff—the ALJ consequently provided germane reasons for discounting the similar testimony and reports of other witnesses." (Doc. 26 at 10 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).) This argument fails here because the Court has determined that the ALJ did not have sufficient reasons to discount Mize's testimony.

**IV.     Conclusion**

The Court affirms the Magistrate Judge's determination that the ALJ erred by discounting Mize's testimony about the severity of her migraine and anxiety symptoms without clear and convincing reasons or substantial evidence. Mize's statements were not inconsistent with the record. Additionally, the ALJ's decision was based on legal error to the extent that it penalized Mize for not producing objective records to corroborate her testimony about the severity and frequency of her migraines. Finally, the ALJ erred by discounting without sufficient reason the lay witness testimony that corroborated Mize's symptoms. These errors were harmful because, if the ALJ had credited the amount of work Mize would miss due to migraines and her inability to work alone or with others, the disability determination would have been different.[2] Accordingly, the Court will overrule the Commissioner's Objection and adopt the R&R.

//

//

//

---

[2] Given the passage of time, the R&R recommends remand for further proceedings. (Doc. 25 at 12–13 (citing *Leon*, 880 F.3d at 1045).) Mize also urges the Court to remand the case for additional proceedings. (Doc. 27 at 8.) Upon review, the Court agrees that remand for further proceedings is an appropriate remedy.

**IT IS ORDERED:**

1. The Commissioner's Objection (Doc. 26) is **OVERRULED**.
2. The Report and Recommendation (Doc. 25) is **ADOPTED**.
3. The Commissioner's Final Decision is **REVERSED**.
4. This case is **REMANDED** to the Social Security Commissioner. On remand, the Appeals Council shall remand this matter to the ALJ. The ALJ shall take any action necessary for resolution of this matter, including conducting any necessary hearings and taking any new evidence. After any necessary proceedings, the ALJ shall issue a new decision consistent with the Report and Recommendation and this Order.
5. The Clerk of Court shall enter judgment accordingly and close the file in this action.

Dated this 31st day of March, 2023.

Honorable Jennifer G. Zipps
United States District Judge